1

2

3

4

5

6                                                          The Honorable Franklin D. Burgess

7                          **UNITED STATES DISTRICT COURT**
                          **WESTERN DISTRICT OF WASHINGTON**
8                                      **AT TACOMA**

9    NATHAN WITT, a minor child, by and          NO.  C04-5139FDB
     through his parents, VALERIE L.
10   WITT, and DANIEL A. WITT,                    DEFENDANTS' MOTION FOR
     husband and wife, individually as a         PARTIAL SUMMARY JUDGMENT
11   marital community, and on behalf of         AND MEMORANDUM IN
     their minor child,                          SUPPORT OF MOTION FOR
12                                               PARTIAL SUMMARY JUDGMENT
                              Plaintiffs,        DISMISSING PLAINTIFFS'
13                                               CLAIMS UNDER 42 U.S.C. § 1985, §
        v.                                       1986 AND § 1988
14
     MARION WARE and JOHN DOE                    NOTED:  JULY 8, 2005
15   WARE, individually and as a marital
     community, NAILA VANDERKOLK
16   and JOHN DOE VANDERKOLK,
     individually and as a marital
17   community, BILL TODD and JANE
     DOE TODD, individually and as a
18   marital community, CARMEN CODY
     and JOHN DOE CODY, individually
19   and as a marital community, LEAH
     STAJDUHAR and JOHN DOE
20   STAJDUHAR, individually and as a
     marital community, BRENDA
21   BIGEAGLE and JOHN DOE
     BIGEAGLE, individually and as a
22   marital community, JANICE
     LANGBEHN and JOHN DOE
23   LANGBEHN, individually and as a
     marital community, CHILDREN'S
24   HOME SOCIETY OF
     WASHINGTON, a non profit
25   Washington corporation, SERVICE
     ALTERNATIVES FOR
26   WASHINGTON, INC.,  a Washington

DEFENDANTS' MOTION FOR PARTIAL            1         ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT                                              Torts Division
NO.  C04-5139FDB                                       629 Woodland Square Loop SE
                                                             PO Box 40126
                                                       Olympia, WA  98504-0126
                                                           (360) 459-6600

1   corporation, SUE BATSON and JOHN
    DOE BATSON, individually and as a
2   marital community, SUSAN
    GOODSON and JOHN DOE
3   GOODSON, individually and as a
    marital community, MELVA BINION
4   and JOHN DOE BINION, individually
    and as a marital community, JANE
5   DOE COATE and JOHN DOE
    COATE, individually and as a marital
6   community, TOM PRICE and JANE
    DOE PRICE, individually and as a
7   marital community, GORDON
    SINCOCK and JANE DOE SINCOCK,
8   individually and as a marital
    community, BONNIE BUSHNELL and
9   JOHN DOE BUSHNELL, individually
    and as a marital community,
10  JEREMIAH OLSON, JANE DOE
    BUTLER and JOHN DOE BUTLER
11  individually and as a marital
    community, JOHN DOE and JANE
12  DOE Numbers One through Five,
    individually and as a marital
13  community, STATE OF
    WASHINGTON and DEPARTMENT
14  OF SOCIAL AND HEALTH
    SERVICES, GERI THOMAS AKERS
15  and JERRY AKERS, individually and
    as a marital community,
16
                        Defendants.
17

18          I.      RELIEF REQUESTED

19          COME NOW defendants, MARION WARE and JOHN DOE WARE, individually and

20  as a marital community, NAILA VANDERKOLK and JOHN DOE VANDERKOLK,

21  individually and as a marital community, BILL TODD and JANE DOE TODD, individually

22  and as a marital community, CARMEN CODY and JOHN DOE CODY, individually and as a

23  marital community, LEAH STAJDUHAR and JOHN DOE STAJDUHAR, individually and as

24  a marital community, BREND BIGEAGLE and JOHN DOE BIGEAGLE, individually and as

25  a marital community, JANICE LANGBEHN and JOHN DOE LANGBEHN, individually and

26  as a marital community, MELVA BINION and JOHN DOE BINION, individually and as a

DEFENDANTS' MOTION FOR PARTIAL                    2                ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT                                                          Torts Division
NO.  C04-5139FDB                                                    629 Woodland Square Loop SE
                                                                          PO Box 40126
                                                                   Olympia, WA  98504-0126
                                                                        (360) 459-6600

marital community, JANE DOE COATE and JOHN DOE COATE, individually and as a marital community, TOM PRICE and JANE DOE PRICE, individually and as a marital community, GORDON SINCOCK and JANE DOE SINCOCK, individually and as a marital community, JANE DOE BUTLER and JOHN DOE BUTLER individually and as a marital community, JOHN DOE and JANE DOE Numbers One through Five, individually and as a marital community, STATE OF WASHINGTON and DEPARTMENT OF SOCIAL AND HEALTH SERVICES, ("Defendants"), and move this Court pursuant to Fed. R. Civ. P. 56 for partial summary judgment dismissal on the grounds that plaintiffs have no evidence to support their claims under 42 U.S.C. § 1985, 42 U.S.C. § 1986 and 42 U.S.C. § 1988 that the individually named defendant social workers, a mental health counselor and a foster parent engaged in a conspiracy to deprive plaintiffs of their civil rights.

## II.    STATEMENT OF FACTS

Nathan Witt ("Nathan") was born on March 7, 1986.  (Complaint, ¶ 1.1)  He has been the subject of two dependency actions.  The first dependency resulted in his biological parents' rights being terminated when he was approximately six years old.  Nathan was allegedly physically, sexually and medically neglected by his biological parents.  (*Id.*, ¶ 4.2)  As part of their lawsuit, plaintiffs allege that Child Protective Services ("CPS") failed to investigate referrals related to the abuse and neglect of Nathan by his biological parents. (*Id.*)

In February 1992, Nathan was placed in foster care with the plaintiffs, Valerie and Daniel Witt.[1]  In March 1993, the plaintiffs, Valerie and Daniel Witt, were appointed guardians of Nathan.[2]  Ultimately, the Witts adopted Nathan along with his four younger siblings in July 1995.[3]

---

[1] See Order of Guardianship attached as Exhibit A to James declaration.
[2] Id.
[3] See Decree of Adoption attached as Exhibit B to James declaration.

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
NO.  C04-5139FDB

3

ATTORNEY GENERAL OF WASHINGTON
Torts Division
629 Woodland Square Loop SE
PO Box 40126
Olympia, WA  98504-0126
(360) 459-6600

1    One year later, in July 1996, the Witts observed that Nathan was "out of control" and

2  they asked that Nathan be removed from their home.[4] (*Id.*, ¶¶ 4.13-4.14)  In July 1996, the

3  Witts voluntarily placed Nathan with the Department of Social and Health Services ("the

4  Department") after they were unable to cope with his behaviors in their home.[5]  Thereafter,

5  Nathan was placed through Children's Home Society ("Children's") in a therapeutic foster

6  home in Vancouver, Washington (Id., ¶ 4.14).  Petitioner alleges that at that home sexual

7  activity began occurring between Nathan and a younger child.  (*Id.*, ¶ 4.16)

8    A dependency was established for Nathan in July 1997 in Lewis County Superior

9  Court, Juvenile Division.  An uncontested order of dependency and disposition was entered in

10  August 1997.[6]  The dependency order required that Nathan would remain in his current

11  placement with Children's until no longer practicable, and then would be placed at the Martin

12  Center, a CLIP facility.[7]

13    In March 1999, at the Witts' request, the Department removed Nathan from Children's

14  and his placement with a family that knew Nathan, with whom he had made significant

15  progress and was willing to make a long term commitment for him.[8] Despite having never met

16  the family with whom Nathan was residing, the Witts insisted that he be moved.[9] Nathan's

17  Foster Care Treatment Coordinator considered it a "shame" to abruptly remove Nathan from a

18  placement that would have been "greatly beneficial to him".[10]

19    During his placement with Children's, the Witts rarely visited Nathan and were unable

20  or unwilling to maintain regular contact with him.[11]   At this time, Nathan had not been

---

21    [4] Nathan has been diagnosed with Attention Deficit Disorder, Oppositional Defiance Disorder, Post

22  Traumatic Stress Disorder, and Reactive Attachment Disorder. He reportedly has an I.Q. of 78.
       [5] See Voluntary Placement Agreement attached as Exhibit C to James Declaration.

23       [6] Order of Dependency and Disposition attached as Exhibit D to James Declaration.
       [7] A CLIP facility is a Children's Long Term Inpatient Program.

24       [8] See Case Narrative Closing (Summary and Recommendations) attached as Exhibit E to James
   declaration.

25       [9] Id.
       [10] See Letter of Sue Billet dated March 30, 1999 attached as Exhibit F to James declaration.

26       [11] Id.

DEFENDANTS' MOTION FOR PARTIAL                        4                    ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT                                                                         Torts Division
NO.  C04-5139FDB                                                                   629 Woodland Square Loop SE
                                                                                          PO Box 40126
                                                                                   Olympia, WA  98504-0126
                                                                                        (360) 459-6600

1  approved for a CLIP facility.  Another foster care agency, Service Alternatives, placed Nathan

2  in a number of foster homes, including one in which he was allegedly raped by another foster

3  child. (*Id.*, ¶ 4.17)

4       In October 1999, the Department restarted the process of obtaining approval of Nathan

5  for a CLIP facility.[12]  Before that approval could be obtained, Nathan committed an assault and

6  malicious mischief on March 29, 2000.   The juvenile court imposed a manifest injustice

7  disposition of 24 months, and Nathan resided at Echo Glen from June 5, 2000 to April 26,

8  2002.[13]

9       While Nathan was incarcerated at Echo Glen for nearly two years, plaintiffs saw him

10  on only four or five occasions.[14]  Echo Glen is a two and a half hour car ride from plaintiffs'

11  home in Centralia.[15]  Plaintiff Valerie Witt agrees that she had minimal telephone contact with

12  Nathan while he was incarcerated at Echo Glen.[16]  When Nathan was about to be released from

13  Echo Glen, plaintiff Valerie Witt told his social worker that getting a restraining order to

14  prevent Nathan from returning to the family home was a possibility.[17]  Plaintiffs' were always

15  up front with Nathan that he could not return to the family because of his behaviors.[18]

16       Plaintiff Valerie Witt admits that as of January 4, 2002, she and her husband had had

17  "minimal contact" with Nathan.[19]  For a period of time, the Witts did not visit with Nathan

18  while he was in foster care to make him understand that he was not going to return home or

19

20

21       [12] See DSHS Individual Service Plan dated February 1, 2000 attached as Exhibit G to James declaration.
         [13] See JRA Admission summary attached as Exhibit H to James declaration.

22       [14] *See* deposition excerpt of Valerie Witt, Vol. II, pg. 38, ln. 18 to pg. 40, ln. 6 attached as Exhibit I to
     James Decl.

23       [15] Id.
         [16] *See* deposition excerpt of Valerie Witt, Vol. II, pg. 47, ln. 10 to pg. 48, ln. 2 attached as Exhibit I to
     James Decl.

24       [17] *See* deposition excerpt of Valerie Witt, Vol. II pg. 41, lns. 10-25 attached as Exhibit I to James Decl.
         [18] Id.

25       [19] *See* deposition excerpt of Valerie Witt Volume II, pg. 45, lns. 16-22, attached as Exhibit I to James

26  Decl.

DEFENDANTS' MOTION FOR PARTIAL          5          ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT                                               Torts Division
NO.  C04-5139FDB                                         629 Woodland Square Loop SE
                                                                PO Box 40126
                                                          Olympia, WA  98504-0126
                                                              (360) 459-6600

1    have any contact with his siblings. [20]   In response to the Witts' refusal to allow him to have

2    visits with his siblings, Nathan refused to have visits with the Witts.[21]   On another occasion,

3    the Witts wrote a letter declining visitations with Nathan until after he had a Fetal Alcohol

4    Assessment.[22]

5         After his release from Echo Glen, Nathan was placed by the Department in a

6    specialized foster home in Ocean Shores.  In October 2002, at the Witts' request and with the

7    agreement of Nathan's guardian ad litem, Barbara Hollingback, and the Department, Nathan

8    was placed by Catholic Community Services in a specialized foster home in Mossyrock.[23]

9         Thereafter, on January 17, 2003, the Department filed a motion for a determination of

10   whether the plan for Nathan would be to return home and to clarify the role of the Witts in the

11   decision making process involving Nathan.[24]  The Witts did not accept the dependency court's

12   decisions with regard to placement and services for Nathan and were interfering with the

13   placement and provision of services to Nathan.[25]  In addition, Nathan had expressed desires for

14   placement different from those of the Witts who felt a CLIP facility was the proper placement

15   for Nathan.[26]  Moreover, a clinician at a CLIP facility who interviewed Nathan for the purpose

16   of rendering an opinion regarding the appropriateness of referring Nathan to such a facility, did

17   not feel that it was clear that Nathan would benefit from a CLIP placement.[27]

18        On January 23, 2003, the Witts obtained, *ex parte*, an Order to Show Cause requiring

19   the Department to appear and show cause why it should not be held in contempt for violating

20        [20] *See* deposition excerpt of Valerie Witt Volume II, pg. 51, line 18 to page 52, ln. 24 attached as Exhibit
21   I to James Decl.
        [21] *See* deposition excerpt of Valerie Witt Volume II, pg. 93, lns. 3-8 attached at Exhibit I to James Decl.
22        [22] *See* deposition excerpt of Valerie Witt Volume II, page 93, lns. 9 to 18 attached as Exhibit I to James
     Decl.
23        [23] See Valerie Witt letter attached as Exhibit J to James declaration.
        [24] See Motion for Return of Child attached as Exhibit K to James declaration.
24        [25] Id.
        [26] See Letter of Jennifer Johnson, attorney for Nathan, dated July 21, 2003 in which she expressed on
     behalf of her client his revocation of any approval for a referral to a CLIP Program attached as Exhibit L to James
25   declaration.
        [27] See Letter of Rick Kendig, M.Ed. dated February 25, 2000 attached as Exhibit M to James declaration.
26

DEFENDANTS' MOTION FOR PARTIAL                    6              ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT                                                          Torts Division
NO.  C04-5139FDB                                                   629 Woodland Square Loop SE
                                                                         PO Box 40126
                                                                   Olympia, WA  98504-0126
                                                                       (360) 459-6600

1   the most recent dependency review order.  On February 20, 2003, the juvenile dependency

2   court entered an order denying the Department's motion to return Nathan to his parents' home

3   after finding that neither the Witts nor Nathan wanted a return to home.[28]  The court also found

4   that Nathan had been making progress and that the Department had done a commendable job

5   providing and supporting Nathan with services and placements.[29]  The court also found that too

6   many people were involved in the day-to-day decisions regarding Nathan and this was

7   disrupting his placements.[30]  The court order limited the Witts' involvement in Nathan's day-

8   to-day decisions and ordered the Witts have no contact with Nathan's foster parents or

9   providers, except through the department or where a representative of the department was

10  present.[31]

11      The Witts filed a Motion for Discretionary Review with Division II of the Washington

12  State Court of Appeals.  The Witts argued that the juvenile dependency court abused its

13  discretion in entering the Order Clarifying Parental Authority, particularly the portions of the

14  order that restricted their involvement in day to day decisions regarding Nathan and restricted

15  their contact with Nathan's service providers, including his educational providers.[32]  The Witts

16  contended the Order effectively terminated their parental rights and that the juvenile court had

17  no grounds to restrict their decision-making, contact with Nathan's placements or contact with

18  Nathan's service providers.[33]  In denying the Witts' motion for discretionary review, the Court

19  Commissioner noted:

20  ───────────────────

21      [28] See Order Clarifying Parental Authority in Continuing Dependency Action attached as Exhibit N to
    James declaration.

22      [29] Id.
        [30] Id. This finding was based on the motion and response of the parties, argument of the parties and the

23  voluminous amount of foster care provider reports, psychological evaluations, neuropsychological reports,
    admission summaries, discharge summaries, CLIP referrals, educational reports, medication evaluations,
    psychiatric evaluations, reports from Department social workers, and reports/declarations of the parents filed in

24  the case.
        [31] See Order Clarifying Parental Authority in Continuing Dependency Action attached as Exhibit N to
    James declaration.

25      [32] See Ruling Denying Review attached as Exhibit O to James declaration.
        [33] Id.

26

DEFENDANTS' MOTION FOR PARTIAL              7          ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT                                                Torts Division
NO.  C04-5139FDB                                          629 Woodland Square Loop SE
                                                                 PO Box 40126
                                                            Olympia, WA  98504-0126
                                                                (360) 459-6600

1
2
3
4
5
6

> The record demonstrates that, with the best of intentions, the Witts, the Department and various care providers have developed differing views as to the best placements and treatments for [Nathan]. The record also demonstrates that the ways some of those differences have been manifested creates a risk of confusion for [Nathan]. While the Witts have the right to a voice in [Nathan's] placements, so long as [Nathan] is a dependent child, the Department has the ultimate custody and control over [Nathan] and his placements. The juvenile court did not abuse its discretion in creating a more structured environment in which the Witts, the Department and [Nathan's] care providers can determine what placements and treatments are in [Nathan's] best interests.[34]

7
8
9
10
11
12

On March 5, 2004, the Witts' filed this suit individually and on behalf of their minor child, Nathan.  On March 7, 2004, Nathan reached the age of majority.  One day later, on March 8, 2004, plaintiff Valerie Witt filed in Grays Harbor County Superior Court a Petition asking that court to appoint her guardian of the person and estate of Nathan, "an incapacitated person by reason of permanent brain damage and personality disorders".  The petitioner has since been appointed guardian for Nathan.

13
14
15
16
17
18
19
20
21
22

Plaintiffs claim that individually named social workers, a mental health counselor and a foster parent conspired to conceal information, misrepresent information, failed to provide information, treatment and services, spread lies and misinformation all in an effort to deprive Nathan of rights and privileges all in violation of 42 U.S.C. § 1985.  (Complaint ¶¶ 11.3-11.12) Additionally, plaintiffs claim that defendants, having the power to prevent wrongs conspired against Nathan, failed to do so by not providing services to Nathan, his natural parents and by failing to file a dependency petition to place Nathan in foster care all in violation of 42 U.S.C. § 1986. (Complaint ¶ 16.2)  Finally, plaintiffs claim a right to reasonable attorney fees under 42 U.S.C. § 1988 for having to enforce protections afforded to Nathan under 42 U.S.C. § 1983, § 1985, § 1986 and § 1987. (Complaint ¶ 17.2)

23
///

24
///

25
26

---

[34] Id.

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
NO.  C04-5139FDB

8

ATTORNEY GENERAL OF WASHINGTON
Torts Division
629 Woodland Square Loop SE
PO Box 40126
Olympia, WA  98504-0126
(360) 459-6600

### III.     STATEMENT OF ISSUES

1. Whether this Court should enter an order granting defendants' Motion for Partial Summary Judgment as to all claims brought by plaintiffs under 42 U.S.C. § 1985, § 1986 and § 1988?

### IV.     EVIDENCE RELIED UPON

This motion is based on the pleadings on file herein and the declaration of Paul F. James submitted herewith along with attached Exhibits A to O.

### V.     AUTHORITY AND ARGUMENT

**A.     Summary Judgment Standards**

A party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  When the nonmoving party has the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325, 106 S. Ct. 2548; *see also Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000) (holding that the *Celotex* "showing" can be made by "pointing out through argument--the absence of evidence to support plaintiff's claim").

Once the moving party carries its initial burden, the adverse party "may not rest upon the mere allegations or denials of the adverse party's pleading", but must provide affidavits or other sources of evidence that "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 323-24, 106 S. Ct. 2548; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1107 (9th Cir.2000) (holding that once the moving party carries its initial burden of production, "the nonmoving parties were obligated to produce evidence in response"); *accord*, *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (2001).

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
NO.  C04-5139FDB

9

ATTORNEY GENERAL OF WASHINGTON
Torts Division
629 Woodland Square Loop SE
PO Box 40126
Olympia, WA  98504-0126
(360) 459-6600

1  　　　As a matter of law, plaintiffs are unable to come forward with specific facts to support

2  their claims that individually named defendant social workers, a mental health counselor and a

3  foster parent engaged in a conspiracy to deprive plaintiffs of their civil rights.  All plaintiffs

4  have are speculation, assumptions and conjecture.  Much more than that is needed.  For the

5  reasons set forth in the following paragraphs, plaintiff's claim under 42 U.S.C. § 1985, § 1986

6  and § 1988 must be dismissed.

7
   **B.     Plaintiffs Have No Evidence That a Conspiracy Existed to Violate Their Civil**
8  **         Rights.**

9  　　　42 U.S.C. § 1985(3) provides in part:

10     If two or more persons in any State . . . conspire . . . for the purpose of depriving,
       either directly or indirectly, any person . . . of the equal protection of the laws, or
11     of equal privileges and immunities under the laws . . .in any case of conspiracy
       set forth in this section, if one or more persons engaged therein do, or cause to be
12     done, any act in furtherance of the object of such conspiracy, whereby another is
       . . . deprived of having and exercising any right or privilege of a citizen of the
13     United States, the party so . . . deprived may have an action for the recovery of
       damages occasioned by such injury or deprivation[.]

14  　　　42 U.S.C. § 1985(3) prohibits conspiracies to deprive persons or classes of persons of

15  the equal protection of the law or of equal privileges and immunities under the law.  Section

16  1985(3) only applies to discriminatory deprivations of federal rights against members of a

17  protected class.  *Griffin v. Breckenridge*, 403 U.S. 88, 102, 29 L. Ed. 2d 338, 91 S. Ct.1790

18  (1971).  Plaintiffs must be a member of a class that requires special federal assistance in

19  protecting its civil rights.  *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir.

20  1990, *cert. denied*, 504 U.S. 957, 119 L. Ed. 2d 227, 112 S. Ct. 2306 (1992).  Thus, section

21  1985(3) does not create a cause of action for conspiracies to deprive persons of rights

22  guaranteed only by state law and it applies only to discriminatory deprivations of federal rights.

23  *United Brotherhood of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 829, 77 L. Ed. 2d 1049,

24  103 S. Ct. 3352 (1983).

25

26

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
NO.  C04-5139FDB

10

ATTORNEY GENERAL OF WASHINGTON
Torts Division
629 Woodland Square Loop SE
PO Box 40126
Olympia, WA  98504-0126
(360) 459-6600

1   Therefore, to recover under Section 1985(3) plaintiffs must prove four elements: a
2   conspiracy; a purpose of depriving them, as members of a protected class, directly or
3   indirectly, of equal protection of the laws, or of equal privileges and immunities under the
4   laws; an act in furtherance of the conspiracy; an injury to their persons or property of
5   deprivation of any right or privilege of a citizen of the *United States.  Volunteer Med. Clinic,*
6   *Inc. v. Operation Rescue*, 948 F.2d 218, 223 (6th Cir. 1991).

7   To establish a conspiracy, plaintiffs must demonstrate the existence of "an agreement or
8   meeting of the minds" to violate the plaintiffs' civil rights.  *United Steelworkers v. Phelps*
9   *Dodge Corp.*, 86 F.2d 1539, 1540-41 (9th Cir.1989) (en banc). The Ninth Circuit has
10  recognized that "[d]irect evidence of improper motive or an agreement among the parties to
11  violate a plaintiff's constitutional rights will only rarely be available." *Mendocino Envtl. Ctr.*
12  *V. Mendocino County,* 192 F.3d 1283, 1302 (9th Cir.1999).  It will therefore almost always be
13  necessary to infer such agreements from circumstantial evidence such as the actions of the
14  defendants.  *Id.*  For example, a showing that the alleged conspirators have committed acts that
15  are "unlikely to have been undertaken without an agreement" may allow a jury to infer the
16  existence of a conspiracy.  *Id.*  at 1301 (citing *Kunik v. Racine County*, 946 F.2d 1574, 1580
17  (7th Circuit).

18  Plaintiffs cannot prove that the individually named defendants, a mental health
19  counselor and a foster parent engaged in a conspiracy to deprive them of their civil rights.
20  That the defendants had differing views from plaintiffs as to the best placements and
21  treatments for Nathan is not evidence of a discriminatory deprivation of plaintiffs' federal
22  rights.  Moreover, plaintiffs make no effort to identify the protected class of which they are
23  members.  Plaintiffs have simply failed to allege facts demonstrating a prima facie case under
24  section 1985(3).

25  Likewise, plaintiffs' cause of action under 42 U.S.C. § 1985(2) is also without merit.
26  Section 1985(2) provides a cause of action against a conspiracy to intimidate a witness from

DEFENDANTS' MOTION FOR PARTIAL                    11            ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT                                                          Torts Division
NO.  C04-5139FDB                                                     629 Woodland Square Loop SE
                                                                              PO Box 40126
                                                                      Olympia, WA  98504-0126
                                                                            (360) 459-6600

1  attending or testifying freely in a *federal* court.  *Rutledge v. Arizona Board of Regents*, 859

2  F.2d 732, 735 (9th Cir. 1988).  Here, at best, plaintiffs have alleged the defendants intimidated

3  witnesses in *state court*. Consequently, plaintiffs have not pled a cause of action upon which

4  relief can be granted.  Section 1985(2) applies to a deprivation of civil rights in federal, not

5  state court proceedings. Thus, all of plaintiffs' causes of action under 42 U.S.C. § 1985 should

6  be dismissed.

7  **C.     Plaintiffs Have No Basis For Liability Under 42 U.S.C. § 1986 or For Recovery of Attorney Fees Under 42 U.S.C. § 1988.**

8

9        A finding of conspiracy under either 42 U.S.C. § 1983 or 42 U.S.C. § 1985 is a

10  necessary prerequisite to a finding of liability under section 1986.  *Torrey v. Tukwila*, 76 Wn.

11  App. 32, 38, 882 P.2d 799 (1994).  Section 1986 authorizes action against any person who

12  knows that a conspiracy actionable under section 1983 or 1985(3) is about to be committed,

13  has the power to prevent or aid preventing the conspiratorial wrongs, and fails to or neglects to

14  act. *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-*

15  *Wisconsin, Inc.*, 759 F. Supp 1339, 1352 (W.D. Wis. 1991).  Moreover, to the extent that

16  plaintiffs' section 1985(3) claim fails for failure to identify a federally protected class, their

17  section 1986 claim fails as well.  *Torrey*, 76 Wn.2d at 38.  Since plaintiffs have failed to

18  produce facts showing the existence of a conspiracy to violate their federal civil rights under

19  either section 1983 or section 1985, there is no basis for liability under section 1986.

20        Likewise, 42 U.S.C. § 1988 is merely procedural in nature and does not create an

21  independent cause of action; its application is dependent on a plaintiff's having stated a claim

22  in which relief can be granted under other federal laws.  *Whitten v. Petroleum Club*, 508 F.

23  Supp. 765, 772 (W.D. La. 1981).  Because plaintiffs have failed to produce any facts showing a

24  violation of their federal rights, they cannot demonstrate a right to attorney fees under section

25  1988.

26

DEFENDANTS' MOTION FOR PARTIAL                    12          ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT                                                         Torts Division
NO.  C04-5139FDB                                                    629 Woodland Square Loop SE
                                                                              PO Box 40126
                                                                      Olympia, WA  98504-0126
                                                                           (360) 459-6600

1

**VI.     CONCLUSION**

2

        Defendants' respectfully request this Court to enter an order granting their Motion for

3

Partial Summary Judgment dismissing the claims of plaintiffs under 42 U.S.C. § 1985, 42

4

U.S.C. § 1986 and 42 U.S.C. § 1988.  A proposed order is filed herewith.

5

6

        DATED this 6th day of June, 2005.

7

                                ROB MCKENNA
                                Attorney General

8

9

                                /s/ Paul F. James
                                _____
10                              PAUL F. JAMES, WSBA#13525
                                Assistant Attorney General
11                              Attorneys for Defendant
                                State of Washington

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION FOR PARTIAL          13          ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT                                                Torts Division
NO.  C04-5139FDB                                         629 Woodland Square Loop SE
                                                                PO Box 40126
                                                          Olympia, WA  98504-0126
                                                               (360) 459-6600

1

2

**CERTIFICATE OF SERVICE**

3
I hereby certify that on June 6, 2005, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

4

5
preble@olylwa.net

6

7
/s/Paul F. James
PAUL F. JAMES, WSBA #13525

8
Assistant Attorney General
Torts Division

9
P.O. Box 40126
Olympia, WA  98504-0116

10
(360) 459-6600

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
NO.  C04-5139FDB

14

ATTORNEY GENERAL OF WASHINGTON
Torts Division
629 Woodland Square Loop SE
PO Box 40126
Olympia, WA  98504-0126
(360) 459-6600